IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00707-MEH

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    10131 GRAPE COURT, THORNTON, COLORADO,
2.    9849 JASPER STREET, COMMERCE CITY, COLORADO,
3.    **$118,955.00 IN UNITED STATES CURRENCY,**
4.    **$40,030.00 IN UNITED STATES CURRENCY,**
5.    2017 GMC SIERRA DENALI 2500, VIN 1GT12UEY3HF104690,
6.    **$10,000.00 IN UNITED STATES CURRENCY SEIZED FROM JONATHAN MARTINEZ,**
7.    **$10,000.00 IN UNITED STATES CURRENCY SEIZED FROM MARCOS RAMIREZ,**
8.    **$264.00 IN UNITED STATES CURRENCY,**
9.    **$24,500.00 IN UNITED STATES CURRENCY,**
10.   $4,563.00 IN UNITED STATES CURRENCY,
11.   MEN'S ROLEX WATCH,
12.   2011 PETERBILT 386 SEMI-TRACTOR,
13.   $6,378.75 SEIZED FROM U.S. BANK ACCOUNT NO. 103683996278, and
14.   $45,716.28 FUNDS SEIZED FROM WELLS FARGO BANK ACCOUNT NO. 7701126034,

    Defendants.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

The United States instituted this action for forfeiture *in rem* pursuant to 21 U.S.C. § 881 on March 26, 2018, seeking the forfeiture of two real properties alleged to be used in violation of federal narcotics law. Compl. ¶ 1, ECF 1. On July 30, 2018, Plaintiff filed an amended complaint seeking the forfeiture of additional property alleged to be used in an operation to supply "large amounts of heroin, cocaine, methamphetamine, and prescription pain narcotics in the North Denver Metro Area." Am. Compl. ¶¶ 3, 6, ECF 20. Currently before the Court is the United

States' Motion for Default and Final Order of Forfeiture (ECF 50), in which Plaintiff seeks a default judgment against the following defendant properties: $118,955.00 in United States currency; $40,030.00 in United States currency; $10,000.00 in United States currency seized from Jonathan Martinez; $10,000.00 in United States currency seized from Marcos Ramirez; $264.00 in United States currency; and $24,500.00 in United States currency. For the reasons below, the Court grants the motion.

## **BACKGROUND**

The following facts are taken from Plaintiff's Verified Amended Complaint. Plaintiff, the United States, instituted this action for forfeiture *in rem*, seeking forfeiture of the defendant properties based on violations of the narcotics provisions of 21 U.S.C. § 801 *et seq*. Plaintiff alleges that in June 2017, Drug Enforcement Agency ("DEA") agents began investigating Heather Knoll, Richard Martinez, and others, as members of a possible drug trafficking enterprise in Northern Colorado. Ms. Knoll was identified as a mid-level poly-drug supplier and bulk currency smuggler; Mr. Martinez was identified as Ms. Knoll's boss and a "source of supply" of large amounts of narcotics.

On November 11, 2017, officers observed Ms. Knoll drive to a Comfort Inn, located at 670 Eagleridge Boulevard, Pueblo, Colorado, and park her 2005 Jeep Grand Cherokee. Another vehicle pulled up adjacent to Ms. Knoll's. Ms. Knoll then exited her vehicle and handed a small, green lunchbox to the driver of the other car, who handed her a plastic, "grocery type" bag, described by investigators as "decently full." Ms. Knoll got back into her Jeep and drove away from the location, entering onto Interstate 25. Shortly after, Pueblo Police K-9 Detective Vincent

Petkosek conducted a traffic stop on Ms. Knoll. During the stop, Detective Petkosek deployed his K-9 partner, named Widget, who alerted to the odor of narcotics emitting from Ms. Knoll's Jeep. After Ms. Knoll refused permission to search the interior of the vehicle, Detective Petkosek seized the 2005 Jeep Grand Cherokee pursuant to probable cause. During a search of the Jeep, investigators located fifteen pounds of marijuana inside two suitcases and found Defendant $118,955.00 in United States currency in an "extremely well made and complex" hidden compartment in the backseat of the vehicle.

On January 25, 2018, Richard Martinez received a call from an individual, later identified as Everardo Nunez-Gutierrez, discussing Ms. Knoll, who was driving a truck from Indianapolis, Indiana, to Denver, Colorado. Mr. Nunez-Gutierrez told Mr. Martinez that the "truck was ready" and that he could not follow Mrs. Knoll back to Colorado because he was on his way to Chicago to drop the rest of the "paper." Plaintiff alleges that "paper" means proceeds from the sale of narcotics.

The next day, Colorado State Police Trooper Ryan Cox observed two vehicles traveling near speeds of eighty miles per hour and observed Defendant 2017 GMC Sierra Denali tailgating closely to another vehicle. Trooper Cox pulled over Defendant 2017 GMC Sierra Denali, which was driven by Ms. Knoll. During the interview following her traffic stop, Ms. Knoll indicated the vehicle she was driving, and occupied alone, belonged to her cousin Richard Martinez. After obtaining consent to run his K-9, named Cain, through and around the vehicle, CSP K-9 Cain alerted to the rear center-seat area of the vehicle's interior. Based his previous experience and on an examination of the blots and area surrounding the rear seat, Trooper Cox believed the read seat had been modified. On January 29, 2018, pursuant to a state search warrant, DEA and Colorado

Springs Police conducted a search of Defendant 2017 GMC Sierra Denali. They discovered a sophisticated, hidden hydraulic compartment in the same area at which CSP K-9 Cain alerted. The hidden compartment contained four clear vacuum-sealed plastic bags, containing Defendant $40,030.00 in United States currency.

On February 24, 2018, Richard Martinez received a telephone call from a subject later identified as Jonathan Martinez. Based on the content of the call, investigators believed that Jonathan Martinez was going to bring narcotics to Richard Martinez. On February 25, 2018, agents intercepted two calls/texts, which indicated that Jonathan Martinez met Richard Martinez at Richard's residence. That day officers also observed a Kia in the driveway of Richard Martinez's residence, which had previous been identified as a vehicle associated with narcotics transportation. The driver of the Kia was identified as Jonathan Martinez. Later that day, Richard Martinez was involved in a phone call indicating he was "short" of money for narcotics that had been taken over to his residence and that he and Jonathan Martinez would meet up the next day, on February 26, 2018, to settle the outstanding balance. On February 26, 2018, Richard Martinez received a call from Jonathan Martinez. Richard Martinez indicated he was at home and Jonathan Martinez stated he needed to "pick up those files" and that he would call "as soon as he picks them up." Plaintiff alleges "files" means narcotics. At approximately 12:03 p.m., Jonathan Martinez sent Richard Martinez a text message indicating that he was at Richard's residence. A pole camera confirmed the presence of the Kia, previously driven by Jonathan Martinez. At 12:09 p.m., a male exited the vehicle and went into Richard Martinez's residence for a few minutes. The vehicle was then followed from the City of Thornton, Colorado to the City of Colorado Springs.

In Colorado Springs, two El Paso County deputies conducted a traffic stop on the Kia, which was driven by Jonathan Martinez. The deputies deployed a K-9, who alerted to the presence of the odor of narcotics inside of the vehicle. A search of the Kia revealed Defendant $264.00 in United States currency in the center console. Officers also located Defendant $10,000.00 in United States currency seized from Jonathan Martinez inside Jonathan Martinez's jacket pocket and Defendant $10,000.00 in United States currency seized from Marcos Ramirez inside Marcos Ramirez's jacket pocket.

On March 1, 2018, Richard Martinez communicated with a subject, "UM9236," who appeared to be a narcotics customer. Based on intercepted calls, it appeared Mr. Martinez would supply UM9236 with cocaine and UM9236 would pay him for this cocaine. On March 2, 2018, Mr. Martinez told UM9236 that UM9236 needed to bring payment for the narcotics transaction to Mr. Martinez's courier, Fred Tafoya, and that UM9236 could meet Mr. Tafoya in the area of the Ugly Dog Bar and Grill located at 1345 Cortez Street, Denver, Colorado. UM9236 advised Mr. Martinez that he would be driving a White Buick SUV. Mr. Martinez then contacted Mr. Tafoya, telling him to go to the Ugly Dog to pick up "around twenty-five" in narcotics proceeds. At approximately 4:00 p.m., a Black Ford F-150, driven by Mr. Tafoya, arrived in the vicinity of a White Buick SUV in the parking lot of the "Lazy Dog."[1] Mr. Tafoya left the truck empty-handed and walked over to the Buick. After approximately one minute at the Buick, Mr. Tafoya returned to his truck with a white zip pouch in his hand and he left the area in his truck.

---

[1] In the Amended Complaint, Plaintiff identifies "the Ugly Dog Bar and Grill" as the location mentioned in conversations between Mr. Martinez and UM9236 and between Mr. Martinez and his courier, Mr. Tafoya. Am. Compl. ¶ 69. Plaintiff also provides the address "1345 Cortez Street, Denver, Colorado," *id.*, which is the location of a sports bar called "Ugly Dog Sports Cafe." *See* UGLY DOG SPORTS CAFE, https://www.uglydogsportscafe.com/ (last visited Jan. 14, 2019). In the next paragraph, Plaintiff alleges Mr. Tafoya received a pouch from another car in the parking lot of the "Lazy Dog." The Court notes the difference, but understands it to be a typo.

A traffic stop was then conducted on the truck in Westminster, Colorado, for vehicle code violations. A consensual search of the inside of the truck located the white pouch, which had been seen in the surveillance at the Ugly Dog. Mr. Tafoya advised that he had $24,500.00 in United States currency inside of the pouch. A K-9 sniff was conducted and the K-9 alerted to the odor of narcotics in the vehicle, specifically to the white pouch. Defendant $24,500.00 in United States currency was seized as drug proceeds. After the currency was seized, Mr. Martinez contacted Mr. Tafoya, who told him the police took "the paperwork" and that he was not comfortable talking on his phone because the police had had it for a couple of hours. Subsequent intercepted calls between Mr. Martinez and UM9236 confirmed that narcotics proceeds were taken from Mr. Tafoya and Mr. Martinez believed UM9236 had compromised the exchange.

## **DISCUSSION**

Plaintiff commenced this action *in rem* pursuant to 21 U.S.C. § 881. Plaintiff seized the six defendant properties at issue in the present motion during searches executed prior to the commencement of this action. Plaintiff has provided all known interested parties with the opportunity to respond to the forfeiture. ECF 21. Plaintiff also filed a Notice of Publication pursuant to Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. ECF 34. This Notice was published on an official government internet site for at least thirty consecutive days. *See* ECF 34-1. No claim, answer, or other responsive pleading has been filed as to the following defendant assets, and the time to do so has expired: $118,955.00 in United States currency; $40,030.00 in United States currency; $10,000.00 in United States currency seized from Jonathan Martinez; $10,000.00 in United States currency seized from Marcos Ramirez; $264.00 in United States currency; and $24,500.00 in United States

6

currency. Based on the Verified Amended Complaint and these facts, the Clerk of the Court entered an Entry of Default as to the above-noted defendant properties on March 5, 2019. ECF 49. Plaintiff now moves for default and a final order of forfeiture as to those defendant assets.

I.      **Entry of Default Judgment**

To enter default judgment, the Court must conclude by a preponderance of the evidence that reasonable cause existed for the seizure. *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two Dollars and 43/100 Dollars ($149,442.43) in United States Currency*, 965 F.2d 868, 876 (10th Cir. 1992) (holding that absent a defense, "a showing of probable cause alone will support a judgment of forfeiture"). "The test for determining probable cause for forfeiture purposes is the same as applies in arrests, searches and seizures. Accordingly, the government must demonstrate a reasonable ground for belief of guilt supported by less than prima facie proof, but more than mere suspicion." *Id*. The Court will address the probable cause as to each defendant asset listed in Plaintiff's motion in turn.

   A. <u>Defendant $118,955.00 in United States Currency</u>

Investigators found Defendant $118,955.00 in United States currency in a hidden compartment in Ms. Knoll's vehicle at a time Ms. Knoll was a target of a federal drug trafficking investigation. Am. Compl. ¶ 27. Just prior to the search, which yielded the defendant currency, surveillance officers witnessed Ms. Knoll drive to a hotel parking lot, wait there for another car to arrive, exchange a small lunchbox for a "decently full" grocery bag with the occupant of the other car, then leave the parking lot. *Id*. at ¶¶ 24-25. The defendant currency was located in a hidden compartment in the backseat of Ms. Knoll's car after a K-9 unit indicated the odor of narcotics. *Id*. at ¶¶ 26-27. In addition to the defendant currency, two suitcases with approximately fifteen

7

pounds of marijuana were found in the back of the car. *Id*. at ¶ 27. Based on these facts, the Court concludes that the government established probable cause to believe that the defendant property was either proceeds of, or was used to facilitate, drug trafficking and that a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465 is appropriate.

    B. <u>Defendant $40,030.00 in United States Currency</u>

Defendant $40,030.00 in United States currency was also found in a "sophisticated hidden hydraulic compartment" in a different vehicle driven by Ms. Knoll. Am. Compl. ¶ 30. While a large amount of hidden currency in itself is not enough to establish that the money was furnished or was intended to be furnished in return for drugs, it is strong evidence of an illicit connection to drug trafficking. *One Hundred Forty-Nine Thousand Four Hundred Forty-Two Dollars and 43/100 Dollars ($149,442.43) in United States Currency*, 965 F.2d at 877; *see also United States v. $93,685.61 in United States Currency*, 730 F.2d 571, 572 (9th Cir. 1984). In addition to the fact that the defendant currency is a large amount and was found in a hidden compartment, the defendant currency was found in a car driven by Ms. Knoll, a target of a federal narcotics trafficking investigation, the day after investigators intercepted communications between other suspected narcotics traffickers discussing Ms. Knoll's transportation of "paper" across state lines. Am. Compl. ¶ 29. The hidden compartment where the defendant currency was found was located in the area of the vehicle where a K-9 had alerted. *Id*. at ¶¶ 31-32. "Circumstantial evidence of drug transactions may support the establishment of probable cause." *Id*. (quoting *United States v. Padilla*, 888 F.2d 642, 644 (9th Cir. 1989)). Based on the above facts, there is more than mere suspicion of a nexus between the defendant property and Ms. Knoll's involvement in drug trafficking. The Court concludes, therefore, that the government established probable cause to

believe that the defendant property was either proceeds of, or was used to facilitate, drug trafficking and that a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465 is appropriate.

    C. <u>Defendants $10,000.00 in United States Currency Seized from Jonathan Martinez, $10,000.00 in United States Currency Seized from Marcos Ramirez, and $264.00 in United States Currency</u>

In this case, officers found Defendants $10,000.00 in United States currency seized from Jonathan Martinez, $10,000.00 in United States currency seized from Marcos Ramirez, and $264.00 in United States Currency after phone call, text message, and video surveillance of Richard Martinez as part of a federal narcotics trafficking investigation. Based on a phone call, investigators believed Richard Martinez intended to buy drugs from Jonathan Martinez. Am. Compl. ¶¶ 55-56. The next day, text messages and physical surveillance confirmed Jonathan went to Richard's house in a Kia previously identified as associated with narcotics trafficking. *Id*. at ¶¶ 57-58. A phone call that day indicated Richard was short of money for narcotics that had been taken over to his residence by Jonathan, and that he would meet Jonathan the following day to settle the balance. *Id*. at ¶ 59. The next day, Jonathan returned to Richard's residence in the Kia, and went inside for a few minutes before leaving. *Id*. at ¶ 60. The defendant currencies were found in the Kia's center console and in the jacket pockets of two of the car's occupants after a K-9 alerted to the presence of the odor of narcotics inside the vehicle during a traffic stop. *Id*. at ¶ 61. The large amount of cash found in a vehicle driven by Jonathan Martinez after he left Richard Martinez's residence, in combination with conversations indicating that Richard was going to buy narcotics from Jonathan and with the K-9's alert to the odor of narcotics in Jonathan's car, are all strong circumstantial evidence that the defendant properties were either proceeds of, or were used to facilitate, drug trafficking. Based on these facts, the Court concludes the government has

9

established probable cause and a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465 is appropriate.

    D. Defendant $24,500.00 in United States Currency

The day Plaintiff seized Defendant $24,500.00 in United States currency, investigators intercepted phone calls from Richard Martinez, the subject of a narcotics trafficking investigation, instructing his courier to go to a parking lot to pick up "about twenty-five" from an individual in a white Buick with whom he had been discussing narcotics sales. Am. Compl. ¶ 69. Later that day, the courier arrived at the parking lot Mr. Martinez mentioned, collected a pouch from a white Buick, and drove off. *Id*. at ¶ 70. After stopping the courier, law enforcement officials found defendant $24,500.00 in United States currency in the pouch they had seen exchanged in the parking lot. *Id*. at ¶ 71. A K-9 alerted to the odor of narcotics in the vehicle, specifically the pouch where the defendant currency was found. *Id*. Under these facts, the government has established probable cause that the defendant asset was either proceeds of, or was used to facilitate, drug trafficking and a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465 is appropriate.

**II.    Finality of the Judgment**

Pursuant to Fed. R. Civ. P. 54(b), "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay." The Tenth Circuit has noted that Rule 54(b) certification is only appropriate when the district court expressly determines: first, that its judgment is final; and second, that no just reason for delay of entry of its judgment exists. *Stockman's Water Co., LLC v. Vaca Partners, L.P.*, 425 F.3d 1265 (10th Cir. 2005); *see also Oklahoma Turnpike Authority v. Bruner*, 259 F.3d 1236 (10th Cir. 2001). In making these determinations, "[f]actors the district court should consider

are 'whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [are] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.'" *Stockman's Water Co., LLC*, 425 F.3d at 1265 (quoting *Curtiss–Wright Corp.*, 446 U.S. 1, 8 (1980)).

After considering these factors, the Court determines that its judgment as to the defendant properties subject of the present motion is final and that there is no just reason for delay of entry of this judgment. Entry of a final judgment will fully and finally resolve the only dispute between Plaintiff and the indicated defendant properties. Thus, in the specific context of the claims of the government against those defendant properties, this Order and concomitant judgment constitute "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Oklahoma Turnpike Authority*, 259 F.3d at 1242 (internal quotation marks and citation omitted). There is no just reason to delay entry of a final judgment on these discreet defendant properties until all other possible claims or issues as to the eight other defendant properties and their claimants have been resolved. Therefore, the judgment in this Order should be certified as a final judgment pursuant to Fed. R. Civ. P. 54(b).

## **CONCLUSION**

Accordingly, Plaintiff's Motion for Default and Final Order of Forfeiture [filed March 5, 2019; ECF 50] is **granted** and it is ORDERED that:

1. default judgment and forfeiture of defendants
    a. $118,955.00 in United States currency;
    b. $40,030.00 in United States currency;
    c. $10,000.00 in United States currency seized from Jonathan Martinez;
    d. $10,000.00 in United States currency seized from Marcos Ramirez;
    e. $264.00 in United States currency; and

f.  $24,500.00 in United States currency

   including all right, title, and interest, shall enter in favor of the United States;

2. the United States shall have full and legal title to the above-listed defendant property and may dispose of said property in accordance with the law;

3. default judgment and a Final Order of Forfeiture be entered as to the above-listed defendant property, which shall serve as a Certificate of Reasonable Cause under 28 U.S.C. § 2465; and

4. there being no just reason for delay, this Order is expressly made final pursuant to Fed. R. Civ. P. 54(b).

The Clerk of the Court is directed to modify the case caption in accordance with this Order.

Dated at Denver, Colorado, this 16th day of January, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge